1

2

3

4

5

6

7

8              **UNITED STATES DISTRICT COURT**

9              **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   FERNANDO TRUJILLO, SR., an              Case No. 14cv2483 BTM(BGS)
     individual; FERNANDO TRUJILLO, JR.,
12   an individual,                          **ORDER GRANTING IN PART AND
                                             DENYING IN PART ALVIN
13                        Plaintiffs,        GOMEZ'S MOTION TO COMPEL
                                             MEDIATION AND ARBITRATION
        v.                                   AND DISMISS OR STAY ACTION**
14

15   ALVIN M. GOMEZ, an individual; and
     DOES 1 through 25, inclusive,
16
                         Defendants.
17

18        Defendant Alvin M. Gomez has filed a Motion to Compel Mediation and

19   Arbitration and Dismiss or Stay Action Based upon Agreement to Mediate and

20   Arbitrate.  For the reasons set forth below, Defendant's motion is **GRANTED**

21   **IN PART** and **DENIED IN PART**.

22

23                        **I.  BACKGROUND**

24        Plaintiffs Fernando Trujillo, Sr. ("Trujillo Sr."), and Fernando Trujillo, Jr.

25   ("Trujillo Jr."), commenced this action on October 17, 2014.  Plaintiffs allege

26   that prior to September 2012, Trujillo Sr. successfully negotiated a distribution

27   agreement ("Distribution Agreement") with Yankon Industries, Inc., doing

28   business in the United States under the business name "Energetic Lighting."

1  (Compl. ¶ 10.)  Under the Distribution Agreement, Trujillo Sr. was granted the

2  exclusive rights to distribute lighting products manufactured by Energetic in

3  Mexico, South America, Central America, Russia, Poland, South Africa, and the

4  United Arab Emirates.  (Id.)

5      In August or September 2012, Trujillo Sr. told Alvin Gomez, his attorney,

6  about the Distribution Agreement.  (Compl. ¶ 12.)  Gomez told Trujillo Sr. that

7  he knew all of the local judges, district attorneys, and political figures in San

8  Diego and that he could use his connections to assist Trujillo Sr. with the

9  distribution of the lighting equipment.  (Id.)  Gomez suggested that it would be

10  best if the Distribution Agreement were assigned to a corporation.  (Compl. ¶

11  13.)  Trujillo Sr. agreed to let Gomez form a corporation.  (Id.)

12      Gomez demanded that he be made a 50% shareholder of the corporation

13  as well as the President and CEO.  (Compl. ¶ 14.)  Gomez advised that Trujillo

14  Jr. be named as a shareholder of the corporation and advised Trujillo Sr. not

15  to hold any interest in the company.  (Id.)  "In so doing, Gomez offered 50% of

16  the yet-to-be-formed company to Trujillo, Sr. and Trujillo, Jr."  (Id.)  Gomez

17  subsequently represented that he would distribute profits of the company

18  50/50.  (Compl. ¶ 15.)

19      On or about September 5, 2012, Gomez formed Platinum LED US, Inc.

20  ("Platinum"), a California corporation.  (Compl. ¶ 16.)  Relying upon Gomez's

21  prior representations, Trujillo Jr. and Trujillo Sr. agreed to assign Trujillo Sr.'s

22  rights under the Distribution Agreement to Platinum in exchange for 250,000

23  shares of Platinum.  (Compl. ¶ 17.)  Trujillo Sr. asked Energetic to replace his

24  name on the Distribution Agreement with Platinum's, and Gomez executed a

25  new Distribution Agreement on behalf of Platinum.  (Id.)

26      Gomez thereafter held Trujillo Sr. out as an "independent contractor" of

27  Platinum.  (Compl. ¶ 17.)  Gomez offered to provide Trujillo Sr. with office

28  space in Gomez's office, a paid salary of $15,000 per month, use of a car, and

1   other like benefits.  (Compl. ¶ 19.)

2      Plaintiffs allege that Gomez did not pay out profits as promised.  Instead,

3   he unreasonably deducted expenses, such as $9,000 per month for rent and

4   $1,000 per month for stationery, and altered the profit arrangement so that

5   Gomez was paid 75% of the profits and Trujillo Sr. was paid 25%.  (Compl. ¶

6   20.)  In or about March of 2014, Gomez ceased paying any salary for Trujillo

7   and refused to distribute any profits.  (Id.)  When Trujillo Sr. complained,

8   Gomez threatened to have him incarcerated, physically beaten, and deported.

9   (Compl. ¶ 21.)

10      Plaintiffs allege that Gomez's representations regarding his connections

11   in San Diego and his ability to leverage those connections as well as his

12   representation regarding the division of profits were false.  (Compl. ¶ 22.)

13   Plaintiffs claim that they reasonably relied on Gomez's representations and that

14   Plaintiffs have suffered financial loss.  (Compl. ¶ 23.)  Plaintiffs allege a claim

15   for violation of the Securities and Exchange Act of 1934, Rule 10(b) and S.E.C.

16   Rule 10b-5 (15 U.S.C. § 78j(b), et seq., and 17 C.F.R. § 240.20b-5).

17

18                                **II.  DISCUSSION**

19      Defendant Alvin Gomez moves to compel non-binding mediation and

20   arbitration pursuant to the terms of a Shareholder Agreement.  Gomez also

21   moves to dismiss or stay this action and requests reasonable attorney's fees

22   and costs in connection with the filing of the instant motion.  The Court finds

23   that the arbitration agreement is enforceable against Plaintiffs and therefore

24   compels arbitration and dismisses this action.  However, the Court declines to

25   compel non-binding mediation and denies Gomez's request for attorney's fees

26   and costs.

27   //

28   //

A.  <u>Enforcement of the Arbitration Agreement</u>

    1.  <u>The Arbitration Agreement</u>

Trujillo Jr. is a signatory to the Platinum LED US Inc. Shareholder Agreement dated May 1, 2013 agreement ("Shareholder Agreement").  (Ex. 1 to Gomez Decl.)  Article 10 of the Shareholder Agreement provides:

> **10.1 Mediation.**  Any claim or controversy arising out of or relating to this *Agreement*, the Corporation, or the rights or obligations of the *Shareholders as Shareholders*, officers, or employees of the Corporation shall first be submitted to mediation in San Diego County. . . .  All shareholders agree that prior to the institution of any demand for Arbitration, that in the event of any dispute, he or she shall agree to mediation with 45 days of any demand for mediation.  This mediation provision must be satisfied in good faith before making a demand for Arbitration.

> **10.2 Arbitration.**  Any claim or controversy arising out of or relating to this *Agreement*, the Corporation, or the rights or obligations of the *Shareholders as Shareholders*, officers, or employees of the Corporation will be settled by binding arbitration in San Diego County, according to the California Arbitration Statutes in effect at the time. . . .  The prevailing party to the arbitration proceeding shall be entitled to reasonable attorneys' fees and costs incurred in enforcing any arbitration award or engaging in any court proceedings only if he or she complies with the mediation provision as set forth in paragraph 10.1.

The Shareholder Agreement also provides that the Agreement "shall be construed according to and governed by the laws of the State of California." Article 12, ¶ 12.3.

    2.  <u>Governing Law</u>

Gomez seeks to enforce the arbitration agreement under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4.  Section 4 of the FAA provides that a party aggrieved by the failure of another to arbitrate under a written agreement for arbitration may petition any United States district court "for an order directing

that such arbitration proceed in the manner provided for in such agreement." Here, the arbitration agreement states that the "California Arbitration Statutes" and California law govern.  Therefore, California's rules of arbitration apply. Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior University, 489 U.S. 468, 477-78 (1989).

The California Arbitration Act, like the FAA, favors arbitration.   Under California law, "A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable, and irrevocable, save upon such grounds as exist for the revocation of any contract."  Cal. Civ. Proc. Code § 1281.  A party bringing a motion to compel arbitration bears the burden of proving the existence of an arbitration agreement, while a party opposing the motion bears the burden of proving by a preponderance of the evidence any fact necessary to its defense. Rosenthal v. Great Western Fin. Sec. Corp., 14 Cal. 4th 394, 413 (1996).

### 3.  Applicability of Cal. Civ. Proc. Code § 1281.2(c)

Plaintiffs argue that the motion to compel should be denied under Cal. Civ. Proc. Code § 1281.2(c), which provides in pertinent part:

> If the court determines that a party to the arbitration is also a party to litigation in a pending court action or special proceeding with a third party as set forth under subdivision (c) herein, the court (1) may refuse to enforce the arbitration agreement and may order intervention or joinder of all parties in a single action or special proceeding; (2) may order intervention or joinder as to all or only certain issues; (3) may order arbitration among the parties who have agreed to arbitration and stay the pending court action or special proceeding pending the outcome of the arbitration proceeding; or (4) may stay arbitration pending the outcome of the court action or special proceeding.

Plaintiffs contend that Trujillo Sr. is a "third party," because he was not a signatory to the Shareholder Agreement, and that there would be a danger of inconsistent rulings if only Trujillo Jr. was compelled to arbitrate his claims.

Whether section 1281.2(c) applies requires "the threshold determination

1  of whether there are nonarbitrable claims against at least one of the parties to

2  the litigation (e.g., a nonsignatory)." <u>Daniels v. Sunrise Senior Living, Inc.</u>, 212

3  Cal. App. 4th 674, 680 (2013).  "Generally speaking, one must be a party to an

4  arbitration agreement to be bound by or invoke it."  <u>Westra v. Marcus &</u>

5  <u>Millchap Real Estate Inv. Brokerage Co., Inc.</u>, 129 Cal. App. 4th 759, 763

6  (2005).  However, there are exceptions to this general rule, including when the

7  non-signatory is a third-party beneficiary or when an agency relationship exists

8  between the nonsignatory and one of the parties to the arbitration agreement.

9  <u>Suh v. Superior Court</u>, 181 Cal. App. 4th 1504, 1512 (2010).

10  For example, in <u>RNSolutions, Inc. v. Catholic Healthcare West</u>, 165 Cal.

11  App. 4th 1511 (2008), the court enforced an arbitration agreement against the

12  plaintiff, a president and CEO of a nurse recruiting company, even though she

13  signed the arbitration agreement only in her capacity as president and CEO.

14  The court explained that the plaintiff "benefited [sic] financially and

15  professionally from the recruitment agreement" between her company and the

16  defendant, which operated a chain of medical facilities, and was bound by the

17  arbitration agreement both as an agent-employee of the recruiting company

18  and as a third party beneficiary of the recruitment agreement.  <u>Id.</u> at 900.

19  In <u>Norcal Mut. Ins. Co. v. Newton</u>, 84 Cal. App. 4th 64 (2001), the court

20  held that an arbitration agreement in a medical malpractice insurance policy

21  was enforceable against the wife of the insured psychiatrist.  The psychiatrist

22  and his wife were sued by another couple who had each been in individual

23  therapy with the doctor and in couples' therapy with both the doctor and his

24  wife.  The plaintiffs alleged sexual misconduct by the doctor and unauthorized

25  treatment by the wife.  The wife tendered defense of the complaint to the

26  insurance company, allowed the insurance company to assume the cost of her

27  defense, and participated in the insurance company's settlement of the case.

28  <u>Id.</u> at 78.  When a subsequent dispute arose between the psychiatrist and wife

1  on the one hand and the insurance company on the other, the wife ratified her

2  attorney's demand for the insurance company to submit to arbitration. Id. at 79.

3  Based on the wife's conduct, which sought the benefit of the insurance policy,

4  the court ruled that the wife also had to accept the burden of the insurance

5  policy. Id. at 81.  Therefore, the wife was required to abide by the policy's

6  requirement of arbitration of disputes arising out of the policy.  Id.

7      It is not disputed that Trujillo Sr. did not sign the Shareholder Agreement.

8  However, it appears that he was a third party beneficiary of the Agreement and

9  that Trujillo Jr. was, in some respects, acting as an agent for him.  As set forth

10  in the Complaint, it was Trujillo Sr. who initially had a distribution agreement

11  with Energetic.  According to the Complaint, Gomez convinced Trujillo Sr. that

12  it would be to his benefit  to assign the Distribution Agreement to a corporation.

13  Gomez allegedly advised Trujillo Sr. that Trujillo Jr. be named as a shareholder

14  of the corporation and that Trujillo Sr. not hold any interest in the company.

15      Although it was agreed that only Trujillo Jr. would be a shareholder of the

16  company, the Complaint alleges: "In so doing, Gomez offered 50% of the yet-

17  to-be-formed company to *Trujillo, Sr. and Trujillo, Jr.*" (Compl. ¶ 14) (emphasis

18  added).  The Complaint also discusses the arrangement with Gomez regarding

19  profits to be paid to *Trujillo Sr.* and states that "*Plaintiffs* hereby offer to return

20  the 250,000 shares of stock in Platinum in exchange for the return of Plaintiffs'

21  rights under the Distribution Agreement."   (Compl. ¶¶ 20, 27) (emphasis

22  added).  Furthermore, the Complaint, which alleges securities fraud, is brought

23  by both Trujillo Sr. and Trujillo Jr.  Thus, it appears that even though Trujillo

24  was not an actual shareholder, there was an understanding among the parties

25  that Trujillo Jr. was holding shares for Trujillo Sr.

26      In addition, in a prior action, Brandrup, et al. v. Gomez, et al., 13cv2254

27  BTM(BGS), brought against Gomez and Trujillo Sr. by Jan Brandrup and

28  Nicklas Brandrup, who were also parties to the Shareholder Agreement, Trujillo

1  Sr. signed a declaration in support of a motion to compel mediation and

2  arbitration.  (Ex. 2 to Gomez Decl.)  In the declaration, Trujillo Sr. states, "It is

3  my understanding and belief that the initial terms of the agreement were

4  prepared by Alvin M. Gomez, Esq. and correctly reflected the understanding of

5  the parties."  (Id. at ¶ 3.)  Trujillo Sr. also states, "It is my understanding and

6  belief that the Shareholder Agreement has a mediation and arbitration clause

7  that requires that any disputes must first be submitted to mediation and . . . that

8  if mediation is not successful, then it has to be submitted and resolved in

9  arbitration."  (Id. at ¶ 7.)[1]

10       In support of Plaintiffs' opposition to the motion to compel arbitration,

11  Trujillo Sr. has submitted a declaration in which he states that Mr. Gomez

12  prepared his prior declaration and that he signed it because Gomez was his

13  attorney, even though he "did not know what statements he had put in the

14  declaration because they all dealt with legal matters."  (Trujillo Sr. Decl. ¶¶ 9,

15  11.)  However, it does not appear that Trujillo Sr. ever complained about

16  Gomez using his influence to get him to sign documents in the Brandrup case

17  until now.  In addition, even though the Complaint states that Trujillo Sr. speaks

18  primarily Spanish and only small amounts of English (Compl. ¶ 5), his current

19  declaration disavowing his prior declaration is written in English and appears

20  to be drafted by his attorneys as well.

21       The Court concludes that Trujillo Sr. was a third-party beneficiary of the

22  Shareholder  Agreement  and  accepted  the  benefits  of  the  Shareholder

23  Agreement.    Therefore,  Trujillo  Sr.  is  also  bound  by  the  Shareholder

24  Agreement's arbitration clause and is not a "third party" within the meaning of

25  Cal. Civ. Proc. Code § 1281.2(c).

26

27  [1]Trujillo Sr.'s motion to compel and supporting declaration were not actually filed in
the case.  However, a certificate of service of the motion and declaration [Doc. 9 in
28  13cv2254] was filed.  Gomez and Platinum filed a separate motion to compel mediation and
arbitration, which was denied without prejudice due to a settlement among the parties.  On
February 13, 2014, the case was dismissed pursuant to a joint motion by the parties.

1      ### 4.   Constructive Fraud and Undue Influence

2      Plaintiffs also argue that the motion to compel should be denied because

3 the arbitration agreement was obtained through constructive fraud and undue

4 influence and thus can be revoked.   Plaintiffs allege that Gomez failed to

5 comply with the California Rules of Professional Conduct and abused his

6 confidential relationship by failing to advise Trujillo Jr. of the conflict of interest

7 posed by their attorney-client relationship and the content and legal effect of

8 the arbitration provision (i.e., that it would result in a waiver of the right to a jury

9 trial).  As discussed below, the Court is not persuaded by this argument.

10      Under California law, a contract is void if there is fraud in the "execution"

11 or "inception" of a contract, meaning "the fraud goes to the inception or

12 execution of the agreement so that the promisor is deceived as to the nature

13 of his act, and actually does not know what he is signing, or does not intend to

14 enter into a contract at all."  Rosenthal v. Great Western Fin. Sec. Corp., 14

15 Cal. 4th 394, 415 (1996) (internal quotation marks and citation omitted).

16 Plaintiffs essentially argue that Trujillo Jr. did not know what he was signing

17 and did not properly assent to the arbitration agreement because he placed his

18 trust in Gomez, his lawyer, who did not advise him about the conflict of interest

19 and the content and effect of the arbitration agreement.

20      When parties are in a fiduciary relationship where the defendant owes the

21 plaintiff a duty to explain the terms of a proposed contract, a breach of the duty

22 may constitute constructive fraud.  Mt. Holyoke Homes v. Jeffer  Mangels

23 Butler & Mitchell, LLP, 219 Cal. App. 4th 1299, 1308 (2013).  The scope of a

24 fiduciary's duty depends on the particular facts of the case.  Id.  An attorney's

25 duties to his client are governed by the California Rules of Professional

26 Conduct together with statutes and general principles relating to other fiduciary

27 relationships.  American Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton,

28 96 Cal. App. 4th 1017, 1032 (2002).

1    Plaintiffs argue that Gomez breached his fiduciary duty and exercised

2 undue influence[2] by violating Rule 3-300 of the California Rules of Professional

3 Conduct.  Rule 3-300 provides:

4      A member shall not enter into a business transaction with a client;
       or knowingly acquire an ownership, possessory, security, or other
5      pecuniary interest adverse to a client, unless each of the following
       requirements has been satisfied:
6
7          (A) The transaction or acquisition and its terms are fair
           and reasonable to the client and are fully disclosed and
           transmitted in writing to the client in a manner which
8          should reasonably have been understood by the client;
           and
9
10         (B) The client is advised in writing that the client may
           seek the advice of an independent lawyer of the client's
           choice and is given a reasonable opportunity to seek
11         that advice; and

12         (C) The client thereafter consents in writing to the
           terms of the transaction or the terms of the acquisition.
13

14    Plaintiffs, however, have not shown that Gomez violated Rule 3-300.

15 Plaintiffs have not presented facts establishing that the Shareholder Agreement

16 or the arbitration clause in particular was unfair or unreasonable.  Furthermore,

17 the Shareholder Agreement clearly states:

18      Gomez Law has disclosed that there is an actual conflict of interest
        and that each shareholder to this particular agreement has a right
19      to consult and retain independent counsel to review this
        agreement.  Each shareholder has been given the opportunity to
20      seek independent counsel and has waived the right to independent
        counsel.

21 (¶ 3.2 of Shareholder Agreement).  Trujillo Jr. placed his signature directly

22 below this disclosure and signed on multiple other pages of the agreement as

23 well.  The Shareholder Agreement also clearly sets forth the arbitration clause

24 in ¶ 10.2, which bears the bold-faced heading, "**Arbitration**."  The arbitration

25 clause specifies that "[a]ny claim or controversy arising out of or relating to this

26 *Agreement*, the Corporation, or the rights or obligations of the *Shareholders* as

27 _____

28    [2]  "Undue influence" includes "the use, by one in whom a confidence is reposed by
      another, or who holds a real or apparent authority over him, of such confidence or authority
      for the purpose of obtaining an unfair advantage over him."  Cal. Civ. Proc. Code § 1575.

1   *Shareholders*, officers, or employees or the Corporation will be settled by

2   binding arbitration . . . ."

3          Plaintiffs do not argue that the language in the Shareholder Agreement

4   is unclear or confusing.  Instead, they argue that Trujillo Jr. did not read the

5   agreement because he felt pressure to return the signed document and trusted

6   that Gomez was looking out for his best interests.  According to Plaintiffs, in

7   July of 2013, Gomez asked Trujillo Sr. to send a draft of the Shareholder

8   Agreement to Trujillo Jr. with the following instructions:

9          This is the legal document of Shares Ownership of Platinum LED
           US INC with your partners.  It is very important and URGENT that
10         you scan it with good quality, sign it, and send it back.  Sign all the
           pages where you see your name and initial wherever you see Alvin
11         and Jan's initials.  I need you to send it as soon as possible so that
           Jan can make the deposit, to my email and to Alvin's.  The date
12         should be May 1, 2013.

13  (Trujillo Sr. Decl. ¶ 5.)  Trujillo Jr. states that when he received the email he

14  was working and taking courses in Australia. (Trujillo Jr. Decl. ¶ 6.)  Trujillo Jr.

15  further states that he felt very pressured to sign the agreement and trusted

16  Gomez, so he signed the agreement without reading it.  (Id. at ¶ 8.)  Trujillo Jr.

17  explains, "Because of the pressure, and because I was in Australia, I did not

18  have access to a California lawyer.  If I had known that Mr. Gomez would try

19  to use this document against me, I would have asked for more time to review

20  the document."  (Id. at ¶ 7.)

21         Plaintiffs contend that Gomez was under a duty to separately inform

22  Trujillo Jr. of the conflict of interest and the existence and effect of the

23  arbitration clause.  However, absent active misrepresentation or special

24  circumstances, California courts have refused to invalidate arbitration

25  agreements between an attorney and client where the client claims that he or

26  she did not read the agreement and was not independently informed of the

27  agreement's contents. For example, in Desert Outdoor Advertising v. Superior

28  Court, 196 Cal. App. 4th 866 (2011), the court held that an arbitration

1   agreement was enforceable against clients suing their attorney for professional

2   negligence.  The clients argued that the attorney had a duty to separately

3   disclose and explain the arbitration clause in the engagement and fee

4   agreement.  Id. at 873.  The court disagreed, reasoning that the clients were

5   knowledgeable business people, the agreement was not a contract of adhesion

6   forced on them, the arbitration provision was readily discernable and clear, and

7   there was no effort to conceal the arbitration clause or any affirmative

8   misrepresentations about it.  Id. at 874-75.

9        Similarly, in Mt. Holyoke, clients suing their attorney for malpractice

10  argued that their attorneys had a duty to explain the significance of the

11  arbitration clause and that their attorneys' failure to satisfy such duty invalidated

12  the arbitration clause.  The court held otherwise, pointing out that the clients

13  had substantial experience with litigation and legal representation, the

14  agreement expressly advised the clients to consult with independent counsel

15  if they wished, the arbitration provision was clear and explicit, and the clients

16  had not shown that the contract was one of adhesion.  210 Cal. App. 4th at

17  1309.  "Defendants had no duty to point out the existence of the arbitration

18  provision or to explain its significance, and their failure to do so does not

19  invalidate the arbitration contract."  Id.  See also Powers v. Dickson, Carlson

20  & Campillo, 54 Cal. App. 4th 1102, 1109 (1997) ("The Powers contend that the

21  arbitration provisions are unenforceable because they did not carefully read the

22  agreements, did not understand the significance of the arbitration provisions,

23  and did not knowingly waive their right to a jury trial in a legal malpractice

24  action.  As a general rule, such arguments may not be used to invalidate a

25  written arbitration provision.")

26       The Court does not have sufficient information to say whether Trujillo Jr.

27  was or was not sophisticated in business or legal matters.  However, according

28  to the Complaint, Trujillo Jr. obtained a bachelor's degree at Boston University.

1   (Compl. ¶ 6.)  Therefore, it is safe to conclude that Trujillo Jr. was able to read

2   and comprehend the Shareholder Agreement, including the terms regarding

3   conflict of interest and binding arbitration.[3]   The Court notes that "[a]n

4   aribtration provision need not contain an express waiver of the right to a jury

5   trial to be enforceable."  Powers, 54 Cal. App. 4th at 1109.

6        Although Gomez's instructions indicated that the matter was "urgent,"

7   there was no threat that there would be adverse consequences if Trujillo Jr. did

8   not return his signature immediately.  It does not appear that there was

9   anything preventing Trujillo Jr. from asking for a few more days so he could

10  thoroughly read the agreement and consult with an attorney if needed.  As

11  already discussed, the agreement clearly informed the parties about the conflict

12  of interest and binding arbitration.  There is no evidence that Gomez misled

13  Trujillo Jr. about the terms of the agreement or that the contract was one of

14  adhesion.

15       Under the facts of this case, the Court finds that Gomez did not have a

16  fiduciary duty to independently inform Trujillo Jr. of the contents and legal effect

17  of the Shareholder Agreement.  Therefore, there was no breach of fiduciary

18  duty, and the arbitration agreement is not void due to constructive fraud or

19  undue influence.

20

21       5.  Scope of the Arbitration Clause

22       Without citing any authority, Plaintiffs argue that the current dispute does

23  not fall within the scope of the arbitration clause because the underlying events

24  took place before the Shareholder Agreement was executed.  Plaintiffs are

25  _____

26       [3] In Rosenthal, 14 Cal. 4th 427-430, the California Supreme Court held that a few plaintiffs who had failed to read the agreement had presented sufficient evidence of fraud in the execution.  However, these plaintiffs were particularly vulnerable - one was an 81-year old Italian immigrant who spoke only a few words of English and could not read English at all, another was legally blind and allegedly relied on oral representations of an employee, another was an 80-year old woman with Alzheimer's and was incapable of understanding complicated monetary transactions.

27

28

incorrect.

Under California law, as under Federal law, "[d]oubts as to whether an arbitration clause applies to a particular dispute are to be resolved in favor of sending the parties to arbitration.  The court should order them to arbitrate unless it is clear that the arbitration clause cannot be interpreted to cover the dispute." Engineers & Architects Ass'n v. Community Dev. Dept., 30 Cal. App. 4th 644, 652 (1994) (internal quotation marks and citations omitted).

The arbitration clause in this case is a broad one, which provides:  "Any claim or controversy arising out of or relating to this *Agreement*, the Corporation, or the rights or obligations of the *Shareholders* as *Shareholders*, officers, or employees or the Corporation will be settled by binding arbitration . . . ."  The clause does not include any temporal limitations and is not limited to claims arising under the Agreement itself.  Courts have rejected arguments that similarly-worded arbitration clauses do not encompass claims because the claims are based on events pre-dating the agreements containing the arbitration clauses.  For example, in In re Verisign, Inc., Derivative Litig., 531 F. Supp. 2d 1173 (N.D. Cal. 2007), the arbitration clause at issue provided that "[a]ny dispute or claim arising out of or relating to the engagement letter between the parties, the services provided thereunder, or any other services provided by or on behalf of KPMG" must be submitted first to mediation and then to arbitration.   Plaintiffs argued that their claims against KPMG were based on events that pre-dated the agreement and that the arbitration provision therefore did not apply.  The court was not persuaded by Plaintiffs' argument and reasoned that the arbitration provision was "extremely broad" and did not cover just services provided under the agreement. Id. at 1224. See also Levin v. Alms & Assoc., Inc., 634 F.3d 260 (2011) (holding that claims that accrued prior the signing of the agreement were covered by the broad language of the arbitration clause).

1      The arbitration clause in this case encompasses disputes relating to the

2 Agreement, the Corporation, or the rights or obligations of shareholders.

3 Plaintiffs' claims for securities fraud certainly relate to the agreement, the

4 corporation, and the rights of Trujillo Jr. as a shareholder.  Therefore, Plaintiffs'

5 claims are subject to binding arbitration.

6

7 B.  Dismissal of Action

8      When granting a motion to compel arbitration, a court may dismiss, rather

9 than stay, the court action when all of the claims will be resolved in arbitration.

10 See, e.g., Alvarado v. Pacific Motor Trucking Co., 2014 WL 3888184 (C.D. Cal.

11 Aug. 7, 2014) (dismissing action under Fed. R. Civ. P. 12(b)(1) because the

12 entire dispute was subject to arbitration).   Because all of Plaintiffs' claims in

13 this case are subject to arbitration, the Court dismisses this action.

14

15 C.  Motion to Compel Mediation

16      In addition to moving to compel binding arbitration, Gomez also seeks to

17 compel non-binding mediation.  However, the Court is not convinced that there

18 is legal authority for doing so.

19      The Eleventh Circuit has held that the mandatory remedies of the FAA

20 may not be invoked to compel mediation. Advanced Bodycare Solutions, LLC

21 v. Thione Int'l, Inc., 524 F.3d 1235 (11th Cir. 2008).   The Eleventh Circuit

22 reasoned that "because the mediation process does not purport to adjudicate

23 or resolve a case in any way, it is not 'arbitration' within the meaning of the

24 FAA" and, therefore, FAA remedies, including motions to compel are not

25 appropriately invoked to compel mediation.  Id. at 1240.

26      Similarly, Cal. Civ. Proc. Code § 1281.2 authorizes motions to compel

27 "arbitration."  No mention is made of mediation.

28      Absent authority for compelling mediation in an action brought by

1   Plaintiffs, the Court declines to do so.

2

3   D.  Motion for Attorney's Fees

4       Gomez requests reasonable attorney's fees and costs for filing the instant

5   motion.  Gomez cites ¶ 10.2 of the Shareholder Agreement as authorizing the

6   award of fees.  Paragraph 10.2 provides: "The prevailing party to the arbitration

7   proceeding shall be entitled to reasonable attorneys' fees and costs incurred

8   in enforcing any arbitration award or engaging in any court proceedings only if

9   he or she complies with the mediation provision as set forth in paragraph 10.1."

10      Here, there is no "prevailing party" to an "arbitration proceeding."

11  Paragraph 10.2 does not authorize an award of attorney's fees for enforcing the

12  arbitration clause.  See Roberts v. Packard, Packard & Johnson, 217 Cal. App.

13  4th 822 (2013) (holding that trial court erred in awarding attorney's fees to

14  defendants for prevailing on a petition to compel arbitration where there was no

15  attorney's fee clause authorizing the recovery of attorney's fees incurred in

16  making a successful petition).  Therefore, Gomez's request for attorney's fees

17  is denied.

18

19                          **III.  CONCLUSION**

20      For the reasons set forth above, Gomez's Motion to Compel Mediation

21  and Arbitration and Dismiss or Stay Action Based upon Agreement to Mediate

22  and Arbitrate is **GRANTED IN PART** and **DENIED IN PART**.  Plaintiffs must

23  arbitrate their claims as provided in the Shareholder Agreement.  This action

24  is **DISMISSED**.

25  **IT IS SO ORDERED.**

26  DATED:  April 17, 2015

27                              BARRY TED MOSKOWITZ, Chief Judge

28                              United States District Court